TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
      Federal Courthouse, 14th Floor
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2569/1785
      Facsimile: (213) 894-0142/0141
      E-mail: Victor.Rodgers@usdoj.gov
              Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>                    v.<br><br>$399,000.00 IN U.S. CURRENCY AND MISCELLANEOUS ITEMS OF JEWELRY,<br><br>              Defendants. | Case No. 2:21-cv-06966-RGK(MARx)<br><br>FIRST AMENDED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6)<br><br>[FBI] |

     Plaintiff United States of America brings this claim against

defendants $399,000.00 in U.S. Currency and Miscellaneous Items of

Jewelry (collectively, "the defendants"), and alleges as follows:

                    JURISDICTION AND VENUE

     1.   The government brings this in rem forfeiture action

pursuant to 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6).

2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

<u>PERSONS AND ENTITIES</u>

4.    The plaintiff in this action is the United States of America.

5.    The defendants in this action are $399,000.00 in U.S. Currency (the "defendant currency") seized by law enforcement officers on or about March 22, 2021, at U.S. Private Vaults at 9182 Olympic Boulevard in Beverly Hills, California and Miscellaneous Items Of Jewelry (the "defendant jewelry") seized on or about July 15, 2021 at the Long Beach, California residence of Derrick Polk, during the execution of a search warrant.  The defendant jewelry consists of one Breitling Super Ocean Watch serial number 7089691, one Breitling Super Ocean Watch serial number 5077160, one Rolex Cosmograph Daytona 40 Watch, one Rolex Yacht-Master Watch serial number 646W59W5, three necklaces, three bracelets, one Rolex Datejust Watch serial number 875D7669, one Breitling for Bentley Watch serial number 209867 and one Rolex President Watch serial number D53P7350.

6.    The defendant currency is currently in the custody of the United States Marshals Service in this District while the defendant jewelry is currently in the custody of the United States Postal Inspection Service, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.    The interests of Derrick Polk may be adversely affected by these proceedings.

/ / /

/ / /

<u>BASIS FOR FORFEITURE</u>

<u>Background Regarding U.S. Private Faults</u>

8.   U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers.  By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9.   The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required."  USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name.  For your privacy and the security of your assets in our vault, **the less we know the better**."  This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10.  USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV.  The posting asserted:

> Banks require clients to provide their social security number and a photo identification as a condition for renting a safe deposit box.  Your information is then filed in the bank's central data system.  This information can be easily accessed by government agencies (such as the IRS) or attorneys armed with court orders. If no one is aware you have a safe deposit box, the contents (your gold) are much safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

11.   In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

As government chartered institutions, banks are now required to file "suspicious activity reports." . . . U.S. Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order.

By marketing services in this fashion, some persons who ultimately became USPV customers, were attracted by the advertisements because USPV's safe deposit box storage facilities offered them a much safer place to store their illegal criminal proceeds, unlike law-abiding banks, so as to eliminate their fear of apprehension by law enforcement and in promotion of their illegal activities.

12.   Further, and in order to shield customers from having law enforcement uncover their illegal activity, USPV encouraged its customers pay their box rental fees in cash.  In addition, USPV charged customers significantly higher prices than those charged by major banks, because USPV offered something which legitimate banks do not: anonymity, a place to store illegally obtained cash, tips and assistance in avoiding law enforcement and a willingness to look the other way with regard to all types of criminal conduct.  And one of USPV's owners has gone so far as to brag about bringing to USPV individuals selling marijuana and other drugs illegally, based on the

owner's connections, by marketing USPV as a safe place for those
criminal actors and potential USPV customers to store their ill-
gotten gains.

13.   Not surprisingly, because USPV's business model is designed
to appeal and cater to criminals, USPV has repeatedly been used by
criminals to store criminal proceeds.  Over the years, the contents
of specific boxes at USPV have been forfeited because they are the
proceeds of criminal activity.  For example, on July 1, 2019,
officers seized $215,653 from Michael Beaver, as he was leaving USPV,
and then seized an additional $1,448,700 from his USPV boxes.
Records from the Employment Development Department (the "EDD"), which
is the California agency to whom employers must report wages earned
by their employees, showed Beaver had no legitimate employment
income.  In addition, Beaver's phones revealed evidence of drug
trafficking activity, and the in excess of $1.6 million funds were
forfeited as proceeds of unlawful activity.

14.   On April 21, 2019, a victim was kidnapped in San Diego and
brutally tortured in a warehouse, where the victim was hit with
sticks and baseball bats; stripped naked; hit with a hammer on the
victim's toes; and set on fire.  Allan Newman was arrested and
charged with kidnapping for ransom, attempted murder, torture and
aggregated mayhem relative to the beating.  The victim had been
employed by a group of people who were engaged in distributing
counterfeit marijuana vaping cartridges, and the group believed the
victim had stolen a suitcase full of cash, which a vape cartridge
customer had left at the warehouse.  A portion of the funds had been
placed by the victim's ex-wife in a safe deposit box at USPV, which
the ex-wife retrieved and used to pay the victim's ransom.

15.   On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box.  Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine.  The currency and gold bars were forfeited, and Ramos was indicted and pleaded guilty to Racketeering and Drug Trafficking, in the Southern District of California.  See United States v. Ramos, Case No. 18cr1404-WQH.

16.   In September 2016, officers seized $592,450 and $435,190, respectively, from two USPV boxes of Mikhail Malykhin, an individual who was the leader of an identity theft/computer intrusion fraud ring.  He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and altering the codes to cash out the debit cards.  Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud.   See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17.   In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes.  However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation.   The funds were forfeited as criminal proceeds.
/ / /

1 See United States of America v. Lebowitz, Central District of

2 California Case No. 17cr-0053-CAS.

3     18.   On October 28, 2015, officers seized $500,000, 22 gold bars

4 and 15 gold coins from the USPV box of Cyrus Irani, who was the

5 master bookmaker and head of an illegal gambling organization that

6 operated both internet and traditional bookmaking operations, and

7 engaged in money laundering.  He pleaded guilty to Enterprise

8 Corruption, and 14 others in his organization were convicted of

9 various gambling, money laundering and enterprise corruption charges.

10 The assets found in Irani's box were forfeited as criminal proceeds.

11 The Property At Issue In This Case

12     19.   The funds seized from the box at issue in this case is an

13 example of persons storing funds from their criminal activity at

14 USPV, as a result of USPV's advertisements, marketing efforts and

15 other transactions and activities, designed to induce persons to rent

16 boxes at USPV to hide their illegal monies.  The funds seized, as

17 well as the defendant jewelry, represent the proceeds of criminal

18 activity and were involved in money laundering activity, which

19 therefore renders them subject to forfeiture.

20     20.   Polk is a drug supplier who provides drugs to others and

21 receives currency in exchange for the drugs he supplies.  In

22 addition, he engages in credit card fraud.  Officers found

23 $399,000.00 in U.S. currency (i.e., the defendant currency) inside

24 Polk's box no. 5911 at USPV.  Polk has a significant criminal

25 history, which includes California and Illinois state felony

26 convictions for aggravated criminal sexual assault, robbery, felony

27 drug convictions and convictions for domestic violence.  In addition,

28 Polk has a 2010 New Jersey federal district court conviction for bank

1   fraud and felon in possession of a firearm for which he was sentenced

2   to 70 months imprisonment and five years of supervised release.  He

3   also has a 2019 State of California conviction for perjury for which

4   Polk is on probation.  With respect to the 2019 perjury conviction,

5   Polk is on probation.  As terms of his probation, Polk is to submit

6   his person and property to search and seizure at any time of the day

7   or night, by any probation officer or other peace officer, with or

8   without a warrant, probable cause or reasonable suspicion.

9       21.  Furthermore, Polk has recently been indicted for drug

10   trafficking.  Polk was one of several defendants named in an

11   indictment filed on August 10, 2021 in the Western District of

12   Pennsylvania charging Polk and his co-conspirators with engaging in a

13   federal drug trafficking conspiracy.  See United States v. Davis, et

14   al., Case No. 21cr16, Western District of Pennsylvania.

15       22.  On or about July 15, 2021, officers executed a federal

16   search warrant at Polk's Long Beach, California residence, which is a

17   luxury apartment, and seized the defendant jewelry and one Taurus

18   International G3C handgun, which Polk later admitted (despite being a

19   felon, making it illegal for Polk to possess the firearm) was his.

20   The defendant jewelry has been appraised, collectively, at

21   $184,610.00.

22       23.  In addition, Polk does not have anywhere near sufficient

23   legal sources of income to justify his acquisition and possession of

24   the $399,000.00 defendant currency and the defendant jewelry, which

25   has been appraised at $184,610.00, meaning that the government has

26   seized assets valued at $583,610.00 from Polk.  According to Polk's

27   probation officer, Polk is a transient living in the Los Angeles Skid

28   Row area, does not have a home address registered with the probation

8

department and is unemployed.  Likewise, information from the California Employment Development Department reflects no wages having been paid to Polk.  In fact, however, Polk resides in the luxury apartment in Long Beach, California where officers found and seized the defendant jewelry, and drives a luxury vehicle.  In addition, Polk purchased merchandise from Ben Bridge Jewelers in November 2020 for $29,893, paying $22,393 of the purchase price in cash.

24.  There are other indicia of narcotic trafficking linking the defendant currency to drug trafficking, in addition to Polk's extensive criminal history and lack of legitimate income.  Those factors include that the funds were bundled, rubber-banded, and in denominations consistent with narcotic trafficking.  In addition, a trained, state-certified narcotic detection canine gave a positive alert to the defendant currency, which signifies that the funds had recently been in close proximity with narcotics.  As of the positive alert, the canine had received hundreds of hours of training (including weekly training after the canine's initial certification) in the detection of cocaine, methamphetamine, marijuana and heroin, and the canine alerts to the scent of narcotics for which the canine is trained.  The canine's training has included routinely checking both circulated and uncirculated United States currency, in order to ensure that the canine does not alert to the actual odor of currency itself but instead to the odor of controlled substances on the currency.  Since the canine's initial certification, the canine has been responsible for the location and seizure of controlled substances and United States currency.

25.  As mentioned above, on July 15, 2021, officers executed a federal search warrant at Polk's residence and seized the defendant

1   jewelry.  During the search, officers also found evidence of Polk

2   engaging in a large credit card fraud scheme, including multiple

3   identity profiles, a fake California driver's license bearing Polk's

4   picture but a different name and copies of Social Security cards.

5   Polk admitted that the fake license was has, and told officers that

6   he intended to use it to open a storage unit under the different name

7   on the license.  Polk also has a history of credit card fraud

8   schemes, including a scheme involving Bank of America where Polk and

9   his co-conspirators added themselves to victims' credit card accounts

10  as authorized users, obtained cash advances on those credit cards,

11  and used the cash to purchase assets.

12                      FIRST CLAIM FOR RELIEF

13      26.  Plaintiff incorporates the allegations of paragraphs 1-25

14  above as though fully set forth herein.

15      27.  Based on the above, plaintiff alleges that the defendants

16  represent or are traceable to proceeds of illegal narcotic

17  trafficking, were intended to be used in one or more exchanges for a

18  controlled substance or listed chemical, or were used or intended to

19  be used to facilitate a controlled substance or listed chemical

20  violation, in violation of 21 U.S.C. § 841 et seq.  The defendants

21  are therefore subject to forfeiture pursuant to 21 U.S.C.

22  § 881(a)(6).

23                     SECOND CLAIM FOR RELIEF

24      28.  Plaintiff incorporates the allegations of paragraphs 1-25

25  above as though fully set forth herein.

26      29.  Based on the above, plaintiff alleges that the defendants

27  constitute or are derived from proceeds traceable to a controlled

28  substance violation, a specified unlawful activity as defined in 18

U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

THIRD CLAIM FOR RELIEF

30.  Plaintiff incorporates the allegations of paragraphs 1-25 above as though fully set forth herein.

31.  Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

FOURTH CLAIM FOR RELIEF

32.  Plaintiff incorporates the allegations of paragraphs 1-25 above as though fully set forth herein.

33.  Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation, and violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud).  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

FIFTH CLAIM FOR RELIEF

34.  Plaintiff incorporates the allegations of paragraphs 1-25 above as though fully set forth herein.

/ / /

35.   Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation, and violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud).   The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a)   that due process issue to enforce the forfeiture of the defendants;

(b)   that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)   that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 12, 2021          TRACY L. WILKISON
                                 Acting United States Attorney
                                 SCOTT M. GARRANGER
                                 Assistant United states Attorney
                                 Chief, Criminal Division


                                 _____/s/_____
                                 VICTOR A. RODGERS
                                 MAXWELL COLL
                                 Assistant United States Attorneys
                                 Asset Forfeiture/General Crimes
                                 Sections

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

<u>VERIFICATION</u>

I, Lynne Zelhart, hereby declare that:

1.   I am a Special Agent with the Federal Bureau of Investigation.

2.   I have read the above First Amended Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the First Amended Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 8, 2021 at Los Angeles, California.


/s/ *Lynne Zelhart*
Lynne Zelhart