1  TRACY L. WILKISON
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   JONATHAN GALATZAN
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS (Cal. Bar No. 101281)
   MAXWELL COLL (Cal. Bar No. 312651)
6  Assistant United States Attorneys
   Asset Forfeiture Section
7        Federal Courthouse, 14th Floor
         312 North Spring Street
8        Los Angeles, California 90012
         Telephone: (213) 894-2569/1785
9        Facsimile: (213) 894-0142
         E-mail: Victor.Rodgers@usdoj.gov
10               Maxwell.Coll@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

12                  UNITED STATES DISTRICT COURT

13             FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                          WESTERN DIVISION

15

| | |
|---|---|
| 16 UNITED STATES OF AMERICA,<br><br>17            Plaintiff,<br><br>18      v.<br><br>19 $399,000.00 IN U.S. CURRENCY AND MISCELLANEOUS ITEMS OF JEWELRY,<br><br>20<br><br>21            Defendants.<br><br>22<br><br>23 DERRICK POLK,<br><br>24            Claimant. | Case No. 2:21-cv-06966-RGK-MAR<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF VICTOR A. RODGERS; [PROPOSED] ORDER GRANTING MOTION LODGED UNDER SEPARATE COVER**<br><br>**[Filed Contemporaneously With Application Pursuant To 18 U.S.C. § 981(a)(1)(5) And Local Rule 79-6 To File Or Lodge In Camera Non-Public Declaration In Support Of Motion]**<br><br>Date:       February 14, 2022<br>Time:       9:00 a.m.<br>Courtroom:  850, the Honorable<br>            R. Gary Klausner |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 14, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, plaintiff United States of America ("the United States") will and hereby does move, pursuant to 18 U.S.C. § 981(g)(1) (i.e., the mandatory stay statute) and the Court's inherent power, for an order to stay this action pending the resolution of a related federal criminal investigation and case. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 29, 2021 (see Rodgers Decl. ¶ 3) and is made on the grounds that proceeding with civil discovery in this case will adversely affect the United States' ability to conduct a related federal criminal investigation and case.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities and declaration of Victor A. Rodgers; the non-public declaration submitted in camera and under seal in support of plaintiff's motion and the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; and such further matters as may be presented at any hearing on this Motion or of which the Court may take notice.

Dated: January 13, 2022              Respectfully submitted,

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

       /s/
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys
Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff United States of America ("United States" or "the government") respectfully submits this memorandum of points and authorities in support of its motion to stay this action pursuant to the mandatory stay provisions of 18 U.S.C. § 981(g) and the Court's inherent power. The United States seeks to stay this action pending the resolution of a related federal criminal investigation and case because proceeding with civil discovery in the instant action will adversely affect the United States' ability to conduct the related federal criminal investigation and case. Under the proposed order lodged herewith, the United States would be required to report to the Court every ninety days regarding the status of the related criminal case and investigation.[1]

## STATEMENT OF FACTS

### A.  The Instant In Rem Civil Forfeiture Action.

The United States has filed a civil forfeiture complaint against defendants $399,000.00 and Miscellaneous Items of Jewelry, alleging they are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 1028, 1341 and 981(a)(1)(A) & (C) because they are traceable proceeds of drug trafficking, identity theft, access device or wire fraud or were intended to be used in additional drug trafficking (first, second and third claims for relief), and were involved in money laundering or attempted money laundering transactions in violation of 18 U.S.C. §§ 1956 and 1957 (fourth and fifth claims for relief). Docket No. 11. The defendant currency was seized on or about March 22, 2021 from claimant's box number 5911 at U.S. Private Vaults ("USPV") in Beverly Hills, California while the defendant jewelry was seized on or about July 15, 2021 at Derrick Polk's residence. Id. at ¶¶ 5, 20 and 22. Derrick Polk (sometimes referred to as "claimant") has filed a claim and an answer. Docket Nos. 22 and 23.

---

[1] The government is also filing, contemporaneously herewith, similar motions to stay the following cases: United States of America v. $600,980.00 in U.S. Currency; Claimant Mitchell Magee, Case No. 2:21-cv-06965-RGK-MAR; and United States of America v. $305,00.00 in U.S. Currency; Claimant Michael Magee, Case No. 2:21-cv-06968-RGK-MAR.

1. <u>The Allegations Of The Government's First Amended Complaint.</u>

USPV is a company that was in the business of renting safe deposit boxes to customers. By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement. Docket No. 11 (FAC) at ¶ 8.

Officers found $399,000.00 (<u>i.e.</u>, the defendant currency) in Polk's box no. 5911 at USPV. Polk's criminal history includes California and Illinois felony convictions for aggravated criminal sexual assault, robbery and drug trafficking, a 2010 New Jersey federal conviction for bank fraud and felon possessing a firearm for which he was sentenced to 70 months imprisonment and five years of supervised release and a 2019 California conviction for perjury for which Polk is on probation. <u>Id.</u> at ¶ 20. In addition, Polk is one of several defendants named in an indictment filed August 10, 2021 in the Western District of Pennsylvania charging Polk and his co-conspirators in a federal drug trafficking conspiracy. <u>See</u> <u>United States v. Davis, et al.</u>, Case No. 21cr16. <u>Id.</u> at ¶ 21.

On or about July 15, 2021, officers executed a federal search warrant at Polk's luxury apartment residence and seized the defendant jewelry which has been appraised at $184,610.00. <u>Id.</u> at ¶ 22. Polk does not have anywhere near sufficient legal sources of income to justify his acquisition and possession of the defendants, valued at $583,610.00 (<u>i.e.</u>, $399,000.00 plus $184,610.00), as Polk's probation officer reported Polk was a transient living in the Los Angeles Skid Row area, without a home address registered with the probation department and was unemployed, and the California Employment Development Department has no record of any wages having been paid to Polk. <u>Id.</u> at ¶ 23. During the July 15, 2021 search at Polk's residence, officers found indicia of credit card fraud, including multiple identity profiles, a fake California driver's license bearing Polk's picture but a different name and copies of Social Security cards. <u>Id.</u> at ¶ 25.

There are other indicia of narcotic trafficking linking the defendant currency to drug trafficking, in addition to Polk's extensive criminal history and lack of legitimate income. Those factors include that the funds were bundled, rubber-banded, and in

denominations consistent with narcotic trafficking and a trained, state-certified narcotic detection canine gave a positive alert to the defendant currency. Id. at ¶ 24.

    2. <u>The Significance Of The Narcotic Indicators Associated With Claimant.</u>

It is settled law that the government may discharge its burden of proving that assets are subject to forfeiture with circumstantial evidence and is <u>not</u> required to trace assets to particular drug transactions. See, e.g., <u>United States v. 1982 Yukon Delta Houseboat</u>, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985) ("[t]here is no need to tie the [defendant asset] to proceeds of a <u>particular</u> <u>identifiable</u> illicit drug transaction") (citation omitted and emphasis in original); <u>United States v. $59,520.00 in U.S. Currency</u>, 2015 WL 5031904, *2 (C.D. Cal. Aug. 24, 2015) ("[i]n order to prove a violation of 21 U.S.C. § 881(a)(6), [the] government may discharge its burden of proving that assets are subject to forfeiture with circumstantial evidence and is not required to trace assets to a particular drug transaction") (citations and internal quotation marks omitted). Courts recognize that the clandestine nature of drug activity typically makes direct evidence of the drug activity (<u>e.g.</u>, records reflecting dates and parties to illegal transactions and monies paid for the illegal activity) unavailable.

Accordingly, proof linking assets to drug trafficking "is likely to be circumstantial, revealing unexplained wealth in conjunction with evidence of drug trafficking." <u>United States v. Daccarett</u>, 6 F.3d 37, 56 (2d Cir. 1993) (internal quotation marks and citation omitted). Under the applicable aggregate of the facts test, the fact-finder considers all of the facts indicative of the alleged illegal activity cumulatively, with no single factor being dispositive, in order to decide whether there is a sufficient nexus between assets and the alleged illegal activity. <u>United States v. U.S. Currency, $42,500.00</u>, 283 F.3d 977, 980-82 (9th Cir. 2002). The factors set forth in the government's complaint are indicia of narcotic trafficking and other illegal activity.

 **B.** **The Related Federal Criminal Case And Investigation.**

The indictment in the federal criminal case pending in the Western District of Pennsylvania seeks to forfeit the defendants named in the instant forfeiture case. See

3

Rodgers Decl. Ex. A (superseding indictment, ¶ 10 of forfeiture allegation at pages 24 and 25).  In addition, the government has filed an application for permission to submit in camera and under seal a declaration which discusses the federal criminal investigation.

## ARGUMENT

### A. A Stay Is Appropriate Because Civil Discovery Will Adversely Affect The Government's Ability To Conduct A Related Federal Criminal Investigation.

18 U.S.C. § 981(g)(1), which is the mandatory stay provision and was adopted as part of the Civil Asset Forfeiture Reform Act of 2000 (the "CAFRA"), provides as follows:

> Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

A stay is appropriate in this case for multiple reasons.  First, in requesting a stay pursuant to 18 U.S.C. § 981(g)(1), "the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial."  18 U.S.C. § 981(g)(5).  Pursuant to this provision, the United States has requested permission to submit a non-public declaration in camera and under seal in support of its stay request.

Even without considering the evidence submitted under seal, a stay is warranted.  If this action is not stayed, claimant will have the right to pursue civil discovery.  Parties are not entitled to serve interrogatories, document requests or take depositions during federal criminal investigations or in federal criminal cases.  See Fed. R. Crim. P. 16.

Where, as here, proceeding with civil discovery would subject the government to broader discovery that it would have to endure in the criminal proceeding (e.g., requiring the government to respond to written discovery or to questioning at depositions in civil proceeding when parties are not required to respond to written discovery or testify in

4

depositions in criminal investigations or cases) or permit claimants and other third parties to obtain discovery earlier than they otherwise would be entitled to receive it in the criminal proceeding, a stay under the mandatory stay provisions of 18 U.S.C. § 981(g) is warranted.  See, e.g., United States v. One Assortment of Seventy-Three Firearms, 352 F. Supp. 2d 2, 4 (D. Me. 2005) (a stay under 18 U.S.C. § 981(g) is appropriate where civil discovery will subject the related criminal investigation "to early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding"); United States v. Real Property and Improvements Located At 10 Table Bluff Road, 2007 WL 911849 at *2 (N.D. Cal. Mar. 23, 2007) (stay must be granted if civil discovery will subject the Government to broader and earlier discovery than would occur in a criminal case).  See also United States v. Contents of Nationwide Life Ins. Annuity Account, 2007 WL 682530, *1 (S.D. Ohio Mar. 1, 2007) ("As the government correctly argues, the Court is also very concerned about Defendants in the criminal case using this civil case as a back door method to obtain discovery outside the scope of Fed. R. Crim. P. 16").[2]

In addition, a stay is warranted under 18 U.S.C. § 981(g) because proceeding with discovery the government would have to answer would likely prejudice the government. United States v. One 2008 Audi R8 Coupe Quattro, 866 F. Supp. 2d 1180, 1184 (C.D. Cal. 2011) (government need not make any particularized showing of prejudice or harm: "Courts have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of likely prejudice to the criminal proceeding caused by the civil discovery")

---

[2] 18 U.S.C. § 981(g) adopted as part of the CAFRA, lightened the burden on the party seeking a stay by eliminating the requirement that the movant establish good cause for the stay and permitting stays even if an ongoing investigation had not yet resulted in a criminal indictment.  See United States v. All Funds Deposited in Account No. 220008534845, 162 F. Supp. 2d 1325, 1330-31 (D. Wyo. 2001).  Numerous courts examining the pre-CAFRA stay statute (which is more restrictive than the CAFRA's mandatory stay provision) held that "good cause" was established because the broader civil discovery available to a forfeiture claimant could interfere with a related criminal case.  United States v. Property at 297 Hawley Street, 727 F. Supp. 90, 91 (W.D.N.Y. 1990) (good cause requirement satisfied as stay necessary to protect criminal case from "potentially" broad discovery demands); United States v. One Single Family Residence Located at 2820 Taft St., 710 F. Supp. 1351, 1352 (S.D. Fla. 1989) (stay granted as "scope of civil discovery could interfere with the criminal prosecution").

(citation omitted and emphasis in original); United States v. $1,026,781.61 in Funds From Florida Capital Bank, 2013 WL 4714188, *1 (C.D. Cal. Jul. 29, 2013) (same).

The government would suffer prejudice because it would have to identify its witnesses and its prosecution strategy in advance of a criminal trial, if discovery were to proceed in this civil forfeiture case. See, e.g., United States v. VIN: WP1AD2A26DLA72280, 2014 WL 289379, *2 (M.D. Fla. Jan. 27, 2014) (stay granted because discovery of the identities of the witnesses in the civil case would jeopardize the criminal investigation); United States v. All Funds on Deposit in Suntrust Bank Account Number XXXXXXXX8359, 456 F. Supp. 2d 64, 66 (D.D.C. 2006) (granting motion for a stay because discovery in civil forfeiture case would adversely affect the criminal investigation because the discovery "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others"); United States v. All Funds on Deposit in Business Marketing Account, 319 F. Supp. 2d 290, 294 (E.D.N.Y. 2004) ("The court is satisfied that information routinely ordered disclosed in civil matters would compromise the identity of confidential informants and cooperating witnesses. Under these circumstances, the court is required to stay this civil action. 18 U.S.C. § 981(g)(1)").

In addition, claimant's Fourth Amendment affirmative defense (docket no. 23, claimant's answer to complaint's sixth affirmative defense) raises factual issues[3] that will require testimonial declarations of law enforcement officers who seized the defendant currency and depositions of other persons such as cooperating witnesses, which will subject those individuals to cross-examination by claimant and create discovery that would have to be turned over as part of the pending criminal case. This is

---

[3] See United States v. Real Property Located at 15324 County Highway E., 332 F.3d 1070 (7th Cir. 2003) (affirming the denial of claimant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment's prohibition against unreasonable search and seizures. The court applied the good faith exception to uphold the search of claimant's real property because the law enforcement officers who searched the premises acted in objectively reasonably reliance upon a facially valid search warrant issued by the judge).

1  exactly the type of discovery that will harm the ability of the government to conduct the
2  related criminal investigation or prosecute a related criminal case, which the CAFRA's
3  mandatory stay provision was designed to avoid.  See United States v. $247,052.54,
4  2007 WL 2009799, *2 (N.D. Cal. Jul. 6, 2007).

5        Moreover, absent a stay, the government would need written and deposition
6  discovery from claimant and other persons involved in the illegal conduct which is part
7  of the criminal investigation and case, as well as from third parties with relevant
8  information pertaining to the investigation and case, in order to prove the government's
9  case in chief and refute the affirmative defenses claimant has raised.  Even if claimant or
10 the third parties responded to government discovery, instead of declining to do so by
11 asserting a privilege against self-incrimination,[4] the government would be creating
12 discovery which would have to be turned over in the criminal case, which would thereby
13 expose the prosecution strategy for proving that particular individuals or entities engaged
14 in illegal conduct.  Therefore, the government's discovery would adversely affect the
15 government's ability to conduct a related criminal investigation or case.

16       In United States v. $247,052.54, 2007 WL 2009799 (N.D. Cal. Jul. 6, 2007),
17 claimant Dobbs argued that because he was prepared to move for summary judgment
18 without seeking any discovery in the civil forfeiture action, the action should not be
19 stayed under 18 U.S.C. § 981(g) because discovery could not adversely affect the
20 criminal prosecution against him.  In rejecting Dobbs' argument and staying the action,
21 the court noted that "Dobbs is not the only party that might want discovery in this action,

---

[4] Key witnesses involved in the illegal activity will likely assert the Fifth Amendment privilege against self-incrimination in response to discovery by the government, meaning that the government would be subject to discovery while claimant would not provide discovery on core issues.  Under these circumstances, a stay is appropriate because permitting discovery from the government would allow impermissible one-way discovery.  See One Assortment of 73 Firearms, 352 F. Supp. 2d at 4 ("a protective order cannot be imposed as an alternative to a stay because [its] effect . . . would be to allow the claimants' to pursue broad civil discovery while the Government would substantially be unable to do so"); 18 U.S.C. § 981(g)(3) ("In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so").

7

however. The Government seeks and is entitled to conduct discovery." Id. at *1 (citation omitted). The court also stated that proceeding with discovery "may have a serious adverse impact on the criminal case against Dobbs[]" and the court reasoned:

> The factual allegations underlying the two cases are very similar. . . . To prove that the Defendants in this case are linked to the sale and distribution of marijuana, and therefore subject to forfeiture, the Government will have to prove many of the same facts it will need to prove in the criminal case. The risk of an adverse effect on the criminal case is clear. The Government asserts that it would need to depose certain witnesses-Edward Shield and Wade Trabue-to proceed on its forfeiture claims. Both are also witnesses with knowledge relevant to the criminal case, and deposing them now would allow Dobbs the opportunity to cross examine them in advance of trial, potentially exposing the Government's strategy for trial, or require them to divulge information related to the criminal case. Dobbs simply ignores this concern. The Government would also require testimonial declarations from law enforcement officers, whose testimony will play a central role in the criminal trial, creating additional risks.

Id. at *2.[5]

Finally, a stay is in the interests of judicial economy as common factual questions are likely to be explored in any subsequently-filed criminal case. The civil forfeiture and criminal investigation and case involve many of the same illegal acts and transactions and the same or similar issues of fact and law. Many, if not most, of the factual disputes and questions relevant to the civil forfeiture action will likely be explored in the criminal case. In any event, the issues left to be determined in the civil forfeiture case after the

---

[5] Accord, United States v. $2,067,437.08 in U.S. Currency, 2008 WL 238514, *6 (E.D. Tex. Jan. 28, 2008) (stay ordered where claimant contented that it could proceed with summary judgment motion without discovery, government claimed it had to engage in ordinary civil discovery and claimant acknowledged that it would be unduly prejudiced if claimant was required to produce discovery while criminal case was pending against claimant).

8

resolution of a related criminal case are likely to be pared down.  The interest of judicial efficiency will be served by narrowing the focus of the civil case to whatever issues are left unresolved after the resolution of any criminal case.

Civil discovery will adversely affect the related criminal investigation and case. Accordingly, this action should be stayed pursuant to 18 U.S.C. § 981(g), the mandatory stay provision.

### B. The Civil Forfeiture Case And Criminal Investigation Are Related.

The criminal investigation and case are clearly related to the civil forfeiture action in light of the broad definition of "related criminal investigation" in 18 U.S.C. § 981(g). That definition makes clear that neither the parties nor the facts in the civil and criminal matters need be identical for the cases to be considered related.  Instead, the court must analyze several factors, which are set forth in the disjunctive:

> In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

18 U.S.C. § 981(g)(4).  In other words, 18 U.S.C. § 981(g)(4) indicates that the forfeiture case and criminal investigation should have some similarities but need not be identical in all aspects.

The civil forfeiture and criminal cases are clearly related under the broad statutory definition.  The criminal case seeks to forfeit the defendants in the instant case.  Also, while unnecessary in light of the related criminal case, the relationship between the civil forfeiture case and criminal investigation is also set forth in the non-public declaration.

### C. A Stay Is Also Appropriate Under The Court's Inherent Power To Control Its Dockets.

The court is also empowered to issue a stay pursuant to its inherent power to control its docket and calendar.  See Mediterranean Enterprises v. Ssangyong Corp., 708

9

F.2d 1458, 1465 (9th Cir. 1983). When "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it," the district court may do so "pending resolution of independent proceedings which bear upon the case." Id. at 1465 (quoting Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979)). This rule "does not require that the issues in [the other] proceedings are necessarily controlling of the action before the court." Leyva, supra, 593 F.2d at 863-64 (citations omitted). "[T]he court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." Id. at 864.[6] Therefore, a stay of this action is also proper under the Court's inherent power.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that its motion be granted.

Dated: January 13, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　/s/
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[6] See also Landis v. North American Co., 299 U.S. 248, 254 (1936) (district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); Wallace v. Kato, 549 U.S. 384, 393-94 (2007) ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").